We'll take 24-3122 Baker v. Braum's. May it please the court, I'm Jonathan Sternberg and I represent the appellant, Kathy Baker, and I do want to thank the court for allowing us to present oral argument this morning. And unlike the previous cases the court heard, I'm going to attempt to do three minutes of rebuttal, but we'll see how that goes. This case is not about whether a step measured two or three inches. Kansas law has never reduced negligence to the simple fact of a ruler. Instead, the rule in Kansas always has been that when reasonable minds can differ on whether a defect is foreseeably dangerous, the jury decides. The district court here erred by declaring that the step that injured my client, Ms. Baker, was a non-actionable slight defect as a matter of law because there were two genuine disputes of material fact that preclude application of that doctrine. First, whether the step itself was foreseeably dangerous, and second, whether Braum's, the defendant's, own actions in painting everything but the step created the hazard. Kansas courts have recognized this slight defect doctrine since the 1930s. We outlined the history in our brief. But it's always been narrow, narrowly construed, and it's never been applied as a mathematical formula. In fact, in the Barnett-Holzgraf case in 2000, the Kansas Court of Appeals squarely held that it's not a bright-line test. It is not a mathematical formula, and instead, each case depends on its own facts. In the McAllister case in 1956, the Kansas Supreme Court divided these defects into three groups. First, ones that, even viewing the facts in the light most favorable to the plaintiff, are completely slight and non-actionable, that there is no foreseeable danger. Second, those that are obviously dangerous and actionable. And then there's the middle category, where reasonable minds can differ. And the Kansas Supreme Court said those go to the jury. And in the Lyon case in 1992, the Kansas Supreme Court also confirmed that the jury can be instructed on this, that if the defendant wants to argue this is a slight defect and they're viewing the facts in a light most favorable to the plaintiff, it could be construed as foreseeably dangerous or actionable in other ways, the jury can be instructed to determine whether they believe it's a slight defect under the law. In the McAllister case, the Kansas Supreme Court applying this rejected summary judgment, and I recognize that it's 1956, but more recently in 2021 in the Walters case, the Federal District of Kansas also did the same. In both cases, the courts held that the small defects there, and both were small defects, under the circumstances presented jury questions. On this record, with these facts, that's the category we're in here. The step Ms. Baker struck on Brahms property was between two and a quarter and three and a quarter inches in height. Studies show that it was 2.8 inches at the middle, and that's where it's alleged that my client struck it. Studies show from our expert that average foot clearance, and in their industry they knew this, that the cities in their own codes knew this, is about an inch and a half. So this is more than enough to trip a person using ordinary care, but that's not all. If that were all, I probably wouldn't be here, but that isn't all. Here, the step blended visually. It was the same color, the same texture, no cues to warn pedestrians, and applicable international safety standards, codes, including the code adopted by the city of Hutchinson, Kansas, where this occurred, state that adjoining walkways have to be flush, and if they can't be flush for some reason, there have to be marked with paint or other visual markings. In Bronze, the defendant knew this. Their own insurance adjuster, Ms. Bateman, testified that they paint curbs and steps bright yellow precisely to prevent injuries, that their incident reports asked whether the thing that was struck was painted, and they knew that this reduces risk. Now at this location, crucially, and this is something the district court really didn't delve into, although we argued it in opposition to summary judgment, and they don't mention it in their reply, at this location, Bronze painted every single curb, every single edge, except this one, bright yellow. Ms. Baker, my client, was walking straight toward the entrance of the Bronze location at Hutchinson, at this walkway, when her toes struck what she said, quote, was the little curb I didn't see. She fractured her leg, she required surgery, she endured a very difficult recovery, and our expert explained that on these facts, this was unreasonably dangerous, and it made sense that a person using ordinary care wouldn't have seen this step because Bronze didn't warn about it. Well, Kansas law sets out various factors that the courts are supposed to consider when looking at this issue, which is considered a threshold issue for the court to make. Whether that's right or wrong isn't really up to us, but they continue to do this post-comparative negligence, and so here we are, and the district court pretty much followed those factors to a T, and it appears, I mean, in terms of going through them, procedurally, and also it appears that the facts are not disputed. I understand you're disputing the outcome and the district court's view of these facts, but the facts themselves appear not to be disputed. Is that right? I don't agree with that. I don't agree with a couple of premises that your honor just stated. First, I don't agree that the district court went through the entire analysis. The district court didn't, so... What did it miss? Sure, accepting at the outset that slight defect in Kansas is not a mathematical formula. They say on page 700 that it is, but it's not. Then you can have slight defects, you can have things that are less than three inches, two inches, whatever they are, that are actionable. Depending on the circumstances. Agreed. The first question is whether, viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could find that despite the height of this wedge, step, whatever we call it, that it is foreseeably dangerous. And in McAllister and in Walters, the courts held that things that were small, three inches or three and a half inches deep in McAllister, and it was less than the height of a foot, a person's or human's foot in Walters, were foreseeably dangerous because of other reasons. Well, wasn't that a creation case, McAllister, where the danger was created? No, Your Honor. That's a getter case, right? So McAllister's the one where there's a sidewalk and a street and there's a hole that's three inches deep that was created by, over time. But it was in dark- And three feet wide. Yes, that's correct. Three feet wide. This is a three foot wide ledge. I mean, the ledge is three feet wide too. Okay, well, this was a three and a half foot wide hole, which is quite a lot different. I appreciate that, but the point in it- Quite a lot different. Well, what I was going to is there's various factors the court is to take into account, and those include how long the defect existed, whether any pedestrians have been injured. They hadn't because of this defect other than the client. Lighting conditions. It was bright daytime. It wasn't in McAllister. The relative size of the defect. We have a 2.8 inch sidewalk defect, which various sidewalk defects of that nature have been found to be within the slight defect rule. So I guess I'm wondering where in that analysis of those factors that the court has over and over and over again applied, did the district court fail here? So the failure is to analyze whether, despite those issues, there's also evidence that this was a foreseeable danger. So in Walters- Isn't that secondary? I thought that first you go through these factors and that essentially helps you determine whether this is foreseeable. If there had been, for instance, other complaints about this, if it was a large defect, if you know that people will be traversing this in the dark without any lights, those make it foreseeable, and that's how the court looks at that. So I think the things that, I don't agree that Kansas works quite that way, and I know Your Honor was a long-time Kansas judge, although I know you weren't on any of these cases that the parties are citing. But in Barnett-Holmgraf, I think the Kansas Court of Appeals goes through a really cool analysis where they look at all the other states that do this too, and there are only a handful, Illinois and Ohio, and they say, all right, when you apply those factors that Your Honor was just mentioning at the outset, that's to determine whether we can apply this light defect rule at all. Then as a secondary consideration, you go to, all right, given all of that, is there also evidence from which a reasonable juror could find that this is unreasonably dangerous? And here there was. And in those cases, aren't they looking at things like danger creation, which you talk about here? That's our second point. So there are two reasons that the slight defect rule, even if something could qualify as a slight defect, wouldn't apply. One is that it's unreasonably dangerous at the outset. That's like Walters. In Walters, one of the things this turned on was that other witnesses testified that they believed that this was a danger. In that case, it was other people who worked for the defendant. In our case, it's an expert witness who went through what the codes are, what the industry standards are, to determine that this is a foreseeable danger. I grant that a jury, in the end, could agree with them. But I think a jury could also agree with us. And under these circumstances, while it's not exactly the same facts as Walters or McAllister, that first factor is met. But Your Honor was mentioning the second part. And I think this is really important because the district courts certainly didn't get into this at all. And this is the fact that they painted every single edge except this one ledge. And if you look at the photographs which are in the briefs, you see yellow along the curves, yellow along the parking dividers. And then there's this one edge, which is this step that my client hit, which does not have any paint at all. Our expert, Mr. Fenton, confirmed that by painting every edge bright yellow except this, this is an affirmative misleading to pedestrians. One of our claims in the pretrial order is failure to warn. And this is part and parcel of the failure to warn claim. And this is actually kind of the mirror image of the Lyon case from the Kansas Supreme Court in 1992. In Lyon, you had, it's not clear exactly how high it was originally, but the highest it ever got was three inches. It was a great that the Kansas Turnpike Authority had put in a walkway in one of their rest stops in the Kansas Turnpike. And the Hardees, who was a licensee and owned the restaurant and the rest stop, their employees had painted it black to make it the same color as the walkway itself. The plaintiff said, well, I was walking along and I saw it, but I didn't see how high it was because it was painted black. And the Kansas Supreme Court said, well, that's the defendant's own negligence in making the hazard that way. Here it's the opposite. Here they painted everything else to warn everyone about the edge of the parking lot, about the rest of the curb, except for this. And our expert says that, I think pretty commonsensically, that an ordinary person using ordinary care, it would blend into that. So this is the mirror opposite of Lyon, but it's the same thing. You can't have a slight defect when the hazard here, the failure to warn by doing this, is of the defendant's own making. And the district court didn't go into that at all. The district court simply said, well, you just say that they had a duty to paint this and I find this is a slight defect, so I'm not going to say that they did. I'll note that in their reply for summary judgment, they didn't even address this at all. They barely addressed it in their brief here. So even if the court were to disagree with me on the first part, that this wasn't foreseeably dangerous, this still was their own negligence that created the problem. I see that I'm almost out of time and I'd like to reserve some time for rebuttal unless the court has questions. Okay. Thank you, Honors. Good morning. May it please the court, Jeremy Taylor for Defendant's Appellees, Bronze, Inc., and Retail Buildings, Inc. I'd like to start off to touch on a little bit of what my friend on the other side was saying about where Bronze painted in the parking lot. Now, as we've outlined in our briefing, and I'll talk about more, we think the question of the yellow paint is a little bit of a red herring, but I do think it's worth the court taking the time to look at the pictures that we provided and they provided in the briefing and that are in the record and see that it's not as if every single surface is painted. What Bronze's contractor painted when the parking lot was redone was parking stripes to delineate between where different cars can park and then areas where the parking lot ends and meets the curb. That's not what we have here. What we have here is a step that exists between the City of Hutchinson sidewalk and Bronze sidewalk. So it's not as if there's some gap in the paint, and I think to the extent that the court believes the painting issue is important, which I don't think it should, but if you're inclined to do that, I would encourage you to look at the pictures and see, I think those are more instructive than how either council can describe it. So maybe you can just start with why does the painting not matter? Great, yeah. So I think it doesn't matter for two reasons. First of all, it's, as we've outlined at length in our briefing here and in front of Chief Judge Brooms, it's the question of painting and whether you have to paint the step is an issue of whether there's a failure to warn. And if a defect is slight or if it's an open and obvious danger or if it's not a dangerous condition, you have no duty to warn about it and you have no duty to paint. That is a response to the initial point that Ms. Baker's council attempted to make, which was that we should have painted the step that her foot made contact with. We then get into a little bit of a moving target with both the expert and some of the briefing on how the painting issue matters. And the second point, and what I'm hearing a lot from council today is about the paintings of other areas of the parking lot somehow being a distraction and that somehow changing this from a slight defect to something other than a slight defect. The problem with that, in addition to the mental gymnastics I have to get through to see how that's logical, is that the record doesn't support that that had anything to do with Ms. Baker's, with the contact Ms. Baker's foot made with the step. In her deposition testimony, she mentions in passing that she saw some paint in the parking lot, but she doesn't mention it in the context of indicating that she was confused, that she was misled. She doesn't say I was walking to the sidewalk and I looked at the step and I saw there was no paint, so I thought there must not have been a height difference. The record just does not support that that is the reason that she was, that she made contact with the step. Now, council is correct that Mr. Fenton mentions this in his expert report, but if you read the piece of his expert report where he talks about painting some areas and not others, he does it in the context of truly stepping into the shoes of the jury and trying to discuss what a reasonable person would see as they approach, and that's just not proper testimony for an expert. Say that again? What was improper that he said? That Mr., the way Mr. Fenton described, let me grab that. The only discussion, so my point is not only does Ms. Baker, does the record not support, as far as Ms. Baker, this painting distraction, confusion reason being the reason for hers, is that Mr. Fenton's report, the one time it mentions this as a distraction, he does discuss at length about this failure to warn issue and that we should have painted the step, but the only context in which he mentions that there was confusion about the painting is this. Quote, it was reasonable and foreseeable that pedestrians using ordinary care would interpret the absence of the yellow stripe at the sideway walkway joint as indicating the adjacent hazardous conditions being warned of did not exist at that location. That is either a conclusion a judge needs to make or that's a conclusion a juror needs to make. That is not a conclusion an expert gets to make, and so those are the reasons we think that those are the reasons this yellow paint is not an issue. And as for the issue of foreseeability spoken about by my friend on the other side, I agree, Judge Moritz, that that's an issue that Chief Judge Brooms can address in any order he wants and at any point he wants, and he did not address it. He jumped right to the slight defect rule, which was well within his power, but. Well, can you explain to me how a judge should, he mentioned a case and I didn't write it down and I know they talked about it in the brief where the Court of Appeals set out this sort of procedural method of applying this slight defect rule, what a court should consider, when it should consider it, and can you address that? Because I'm a little confused about the, you know, it looked to me like the courts just generally take these different factors and they apply them. And to me, the factors kind of go to foreseeability, but is foreseeability some separate concept that they're supposed to consider? No, I agree, it does. Along with the creation of the defect point? Yeah, so the creation of the, well, let me first say, I agree, I think that foreseeability is a part of these factors and is something that's considered as a whole and often, frankly, not explicitly stated by the courts, but for example, in Chief Judge Broome's opinion, he relied on the uncontroverted facts that this had been around for years, that there had been no prior complaints, no prior injuries, nothing to put Brahms on any notice or make it foreseeable to anyone. Those are the factors that they consider, right? Those are the factors and I think those ring of foreseeability, even if the word foreseeability is not explicitly used. Now, the creation issue you mentioned is an exception and that is the, that's an exception to the rule and that's what's dealt with in the Lyons case and the Lyons case is also discussed and addressed at length by Chief Judge Broome's and he was exactly right that the Lyons case does not apply here because I actually agree with my friend on the other side about the Lyons case. I think it's a mirror image of this case, but in a different way, I think, than he probably sees it. In Lyons, as he mentioned, the Turnpike Authority installed this grate or this grate and then the restaurant, for some reason, raised it and painted it black and the Court of Appeals said, no, you negligently changed the conditions and so the slight defect rule doesn't apply. Here, the last entity that had any opportunity to make a change to the condition of the step existing was the City of Hutchinson. When the City of Hutchinson redid its sidewalk in the area and did not bring the sidewalk, the panels, where the Brahms sidewalk and the City of Hutchinson sidewalk meet, it did not bring them level. So as Chief Judge Broome's pointed out, that is an issue, that is not something Brahms had any negligence or active negligence or active role in creating the step as it existed on the day Ms. Baker had her incident. It was done by the City of Hutchinson. So can I just ask you, so you're saying, well, you didn't create the sidewalk. So you can't fit into that exception. Could any, when you, I mean, their claim basically is you could see that that was a danger and you should have painted it yellow. I mean, isn't that creating, I mean, you didn't create the sidewalk, but you created the danger. I just, so Your Honor, I disagree that we created the, even the danger if, well, first of all, we disagree that it's a danger and we moved on summary judgment and Chief Judge Broome's did not address. We moved under, there's no arguing this is not a dangerous condition, arguing if it was, it was open and obvious. And what he did rule on was the slight defect. But to answer your question about whether, I apologize, can you repeat your question? Yeah, well, I mean, you're essentially saying you can't fall within the exception because you did not create the danger, which is what is required. But, so you say we didn't create the danger because we had nothing to do with the sidewalk. That was done before, right? Or that was done by the city. We didn't do anything with regard to the sidewalk. But I think the argument is, maybe you didn't create the sidewalk, but you did create the danger because you saw the sidewalk and its unevenness and you didn't paint it. Yeah, Your Honor, so, and to be clear, the sidewalk where she struck her foot was a Brahms sidewalk panel. It was the city of Hutchinson sidewalk. So I just, I don't wanna be, I don't wanna. Okay, so you did create the sidewalk. Yeah, but the quote unquote danger, which we don't agree is a danger, is the fact that there is a height difference between the two. And that is what the city of Hutchinson did not address when it redid the sidewalk most recently, was bringing them level. But I don't agree that we had no reason to know that this was something we should have warned about. This had been around for years. And there was no reason for Brahms to think there was any danger. It's a step. It's a change between two walking elevations. I, this is- Well, and I understand that argument too, but I mean, does that prevent you from falling in the create the danger exception? That we chose not to paint. I think that's not what the create the danger exception addresses. I think if the court believes that we should have painted the sidewalk, I think the court first as a threshold matter has to find that this is more than a slight defect, or this is not a slight defect, and this doesn't fit in that. I don't think whether or not- Well, listen, I'm sorry. I thought create a danger was an exception to the slight defect, right? So you're saying you have to find a slight defect first, so if you're asking whether creating a danger, whether by failing to paint, we created a danger, we, I don't, the danger, the creation of the danger exception has to be negligent. It's not just an act. It has to actually be negligence, and that's what the Lyons case stands for. So then if we've decided there's a slight defect, or if we want to skip that step and go to the exception to analyze it first, we first then have to stand and think, as Brahms, was it unreasonable to not paint the step with all the information they had? And the information they had was that this was plainly a change in elevation. It's plainly visible, as you can see from the photos in the record, plainly visible are, by the way, words that, let me stop you there. My understanding was the exception argument was you didn't have to paint the step yellow, but you painted everything else yellow. That created a danger because it distracted people or gave people comfort that they shouldn't have had, and that was the creation of danger. It wasn't the failure to paint the step itself. It was the fact that you painted these other lines and didn't paint the step, and your response earlier was there's no evidence that that distraction affected the injury in this case. That's correct. And you're getting into some sort of, it's getting too complicated for me, I guess is what I'm saying. That's correct, Your Honor. You stated it better than I did. Thank you. Yeah, I thought your argument was really causation. And painting the yellow lines in the parking lot didn't cause the accident. Correct, yes, that's true. There's no support in the record for that being what actually caused her incident. But painting those lines in the parking lot was the creation of something. You're saying whatever it created, even if it was a danger, it didn't create the accident in this case. Yes, and I don't agree that it created a danger at all. Is the argument that the defect was there already? I mean, unlike these other cases, the defect was there. Whatever it was, the 2.8 inch defect was there. So nothing changed that. Yeah, correct. How it was perceived could have been changed, however, by the painting of the lines. There's nothing in the record to suggest that the painting of the lines was anything new either, that these lines had just recently been painted or anything like that. That is not an argument that is... Really, we don't know when they were painted? Not that I'm aware in the record, but no, I do not think that's a recent change either. Okay, thank you. Thank you.  Counsel, would you start? I respond to that last point. Is there any evidence of when the painting occurred? I'd assumed it was something recent, but I... I think it was too. So I think this is taken, this is volume two, page 367 and 390 to 91. I'd have to actually go and look at the record itself. This is the citation in my brief, and I believe I took this from our response to their motion for summary judgment, that in September 2020, which was actually when this accident occurred, it was shortly before the accident, they had painted all the curbs and steps in the parking lot bright yellow. I believe that's what's in the record. And it wasn't repainting them, it was a new painting. I don't know if that's in the record itself, but it says that they had painted all the curbs and steps in that parking lot that way. So, you know, if they hadn't done any hazard lines, if they'd just done nothing at all, you're suggesting that would have been better? Under these circumstances, where they're leaving this one part out, possibly, Your Honor, yes. But you don't really have any evidence that her perception was changed by these lines. I disagree with that, too. Here, it's not just that we take, my client's testimony is true, but we draw inferences from the whole record, the record as a whole in my client's favor. The expert testified, and this is not improper expert testimony, it's standard of care testimony, this is something experts do every day in every kind of case, said that under these circumstances, it is reasonable that a person, it's foreseeable, that a person would not see that this step is different. My client, volume one, page 208, says this is the little curb I didn't see. She's saying I didn't see it. And the inference we can draw from the expert saying that an ordinary person exercising ordinary care wouldn't see this, and my client, who was exercising ordinary care, not seeing it, is that that's a reason for it. Yeah, but you mean that the reason she didn't see it was because of the yellow lines in the parking lot? I don't know that an ordinary person, Your Honor, would ever be able to say that's the reason I didn't see it. Well, you have to prove causation. Certainly, and I think the expert's testimony, as well, I say I'm out of time, combined with my client's testimony, the jury can draw an inference that this is what caused it, that this is an inference of causation. But I see I'm out of time, Your Honors. Thank you very much, we ask the court to reverse. Thank you. Thank you, counsel, case submitted.